THE STROMA.[1]

NAPIER SHIPPING Co. *v.* PANAMA R. Co.

*(District Court, S. D. New York. May 15, 1890.)*

WHARVES—DAMAGES TO VESSEL FROM OBSTRUCTION—LIABILITY OF WHARFINGER.
  A wharfinger is not liable for injuries occasioned to a vessel, while mooring, by reason of recent obstructions in the water along-side the dock caused by the sinking of a dredge, when the circumstances are as well known to the agents of the vessel as to the wharfinger, and they, and not the wharfinger, undertake to dock the ship in a manner to avoid the apprehended obstructions.

In Admiralty.
*Butler, Stillman & Hubbard,* for libelant.
*Coudert Bros.,* for respondent.

BROWN, J. The libelant, as owner of the steamer Stroma, seeks to recover damages received by the steamer while moored along-side the respondent's pier at Colon, Panama, on December 31, 1888. With the fall of the tide the steamer settled upon the point of a spindle, which was the upper end of a derrick attached to a sunken dredge. The spindle penetrated the steamer's side so as to cause her to fill with water and sink. The case has been elaborately and exhaustively presented to the court. No case is cited, however, in which a wharfinger has been held liable under circumstances like the present, nor does the case seem to me to fall within the recognized principles on which wharfingers are held liable. They are bound to exercise care and diligence as to the safety of their premises, so that ships that come to their wharves on their invitation shall not be damaged by unsuspected obstructions, and, in case of danger, to give due notice thereof. In the present case the dredge had sunk in the slip several weeks before. Mr. Andrews, the local agent of the steamer, saw the dredge sink. From that time until the Stroma went along-side at the outer end of the pier, no vessel had been permitted by the respondent to go to the pier on that side of the slip. Work was proceeding for the removal of the dredge, and several buoys had been set to indicate the place of its several parts. Mr. Andrews' office was in the immediate

---

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

vicinity, and he could not have failed to observe that no vessels had been moored on that side of the slip since the dredge sank. There is some difference in the accounts given by him and by Mr. Abello, the respondent's agent, as to the conversation between them in reference to the Stroma's coming to the dock. There is no question, however, that the privilege for her to do so was sought by Mr. Andrews, and that he proposed that she should go to the seaward end of the dock. Mr. Abello testifies that he first declined permission on account of the wreck, and that Mr. Andrews then proposed to go outside of the wreck, to which Mr. Abello says he finally assented.

It is not necessary to determine whether either is exact as to the precise language used in this conversation; but it is clear that each had practically the same means of knowledge, and that each had substantially the same knowledge about the place of the wreck, the buoys placed there, and the liability to danger. The case is not, therefore, one of a vessel coming to a usual wharf without notice or suspicion of danger, nor of the opening of a wharf for the public accommodation, with the implied invitation to vessels to use it as a safe place. *Heissenbuttel* v. *Mayor*, 30 Fed. Rep. 456; *Smith* v. *Havemeyer*, 36 Fed. Rep. 927; *The C. P. Harris*, 33 Fed. Rep. 295; *The Moorcock*, 14 Prob. Div. 64–70. Mr. Andrews knew of the obstruction of the dredge sunk in that immediate vicinity. The permission given, whatever the exact words used, was a permission to moor outside of the sunken wreck, and Mr. Andrews could not have understood it otherwise. As I have said, Mr. Andrews had the same knowledge as Mr. Abello where the wreck was, and of the buoys placed there. It was he, not the respondent or its agents, that undertook to put the ship in position, and did so; and the risk of so placing the steamer as to be outside of the wreck was therefore assumed by the libelant, and not by the respondent. There was no concealment and no misrepresentation and no negligence on the part of the respondent; nor did they have any hand in mooring the steamer where she was placed. Mr. Andrews had all the notice that was needed, or that could have been given, by the nature of the permission obtained, by having seen the dredge sink, and by the exclamations of caution given by those on the dock in reference to the buoys and the sunken dredge at the very time when the steamer was approaching and taking her position. Under such circumstances, the grounds of the wharfinger's liability fail, and the libel should therefore be dismissed, with costs.